UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STEPHANIE BYE,<br><br>           Plaintiff,<br>   v.<br><br>AUGMENIX, INC.,<br><br>           Defendant. | CASE NO. C18-1279-JCC<br><br>ORDER |

This matter comes before the Court on Defendant's motion for judgment on the pleadings (Dkt. No. 13). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion in part and DENIES the motion in part for the reasons explained herein.

I.    **BACKGROUND**

In June 2017, Plaintiff Stephanie Bye began working as a regional sales manager for Defendant Augmenix, Inc. (Dkt. No. 1-1 at 2.) Defendant manufactures a medical device called the SpaceOAR, which it sells to oncology practices across the United States. (*Id*. at 3.) Plaintiff worked in the Pacific Northwest region under the direct supervision of Tony Viselli. (*Id*. at 2.)

A few months after beginning work, Plaintiff learned that a colleague was stealing money from Defendant by submitting fraudulent travel reimbursements. (*Id*.) After conferring with a senior executive from another region, Plaintiff confronted her co-worker and informed Mr.

Viselli of the suspected theft. (*Id.*) Mr. Viselli was irritated that Plaintiff had contacted someone outside the region, and told Plaintiff that he did not want to report the incident to human resources. (*Id.* at 3.)

Around the same time, Plaintiff became aware of a scheme involving Mr. Viselli and other co-workers that she believed violated state and federal law. (*Id.* at 3–4.) It was challenging to sell the SpaceOAR to medical practices that did not have the compatible ultrasound equipment—known as "Sonoscape"—needed to use the device. (*Id.* at 3.) In order to generate more sales, Mr. Viselli and other sales representatives devised a plan where they would provide prospective purchasers with the Sonoscape free of charge in order to induce them to purchase the SpaceOAR. (*Id.* at 3.) Plaintiff believed that the employees involved in the scheme were obtaining the Sonoscape from a co-worker's side business and that some of these items were being entered on expense reports as "demo" equipment. (*Id.* at 4.)

Although Defendant generally prohibited this type of conduct, Mr. Viselli and others took steps to modify and expand their scheme. (*Id.*) When it became clear that Plaintiff was not going to cooperate in the scheme, the employees involved sought to conceal their conduct. (*Id.*) They created a fake email account to communicate about the scheme and avoided making any references to the Sonoscape. (*Id.*) In January 2018, Plaintiff raised concerns about the Sonoscape scheme to several of Defendant's senior executives. (*Id.* at 5.) Plaintiff separately complained to Mr. Viselli about multiple issues, including the unlawful, off-label use of products by certain providers as well as possible Medicare fraud by another physician with whom Mr. Viselli worked closely. (*Id.* at 5.)

In April 2017,[1] both Plaintiff and Mr. Viselli were temporarily restricted from accessing Providence medical facilities due to an order requisition issue. (*Id.*) On May 4, 2018, Defendant terminated Plaintiff for her purported "inability to follow directives and lack of professionalism

---

[1] Based on the other allegations in the complaint, it appears this date should be April 2018. Plaintiff did not work for Defendant in April 2017. (Dkt. No. 1-1 at 2.)

with team and accounts." (*Id*.) The month before being terminated, Plaintiff was ranked as one of Defendant's top three sales representatives. (*Id*. at 2.) Prior to being terminated, Plaintiff had never received any write-ups, counseling, or warnings of any kind. (*Id*. at 5.)

Plaintiff believes that Defendant had grown tired of her voicing concerns about the unethical and unlawful conduct of her co-workers, and therefore terminated her employment for the pretextual reason that her access to Providence had been restricted. (*Id*.) Plaintiff further alleges that Defendant's reason was pretextual because another employee directly supervised by Mr. Viselli was neither disciplined nor terminated for having his access privileges revoked at a medical facility in California. (*Id*. at 6.) That employee was male and significantly younger than Plaintiff. (*Id*.)

Plaintiff filed this lawsuit alleging the common law claim of unlawful termination in violation of public policy, as well as disparate treatment discrimination on the basis of gender and age pursuant to the Washington Law Against Discrimination ("WLAD"), Revised Code of Washington section 49.60.030. (Dkt. No. 1-1 at 6–8.) Defendant moves for judgment on the pleadings, arguing that Plaintiff has failed to plead sufficient factual allegations to make her claims plausible. (*See generally* Dkt. No. 13.)

## II. DISCUSSION

### A. Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is "functionally identical" to a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). As such, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Hansen v. Boeing Co.*, 903 F. Supp. 2d 1215, 1217 (W.D. Wash. 2012) (applying Rule 12(b)(6) plausibility standard to resolve a Rule 12(c) motion). A

claim is plausible where the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In conducting this analysis, the Court must accept the complaint's factual allegations as true and credit all reasonable inferences arising from those allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007).

### B. Unlawful Termination in Violation of Public Policy

As a general rule, employees in Washington work at-will, meaning they can quit or be fired for any reason. *Gardner v. Loomis Armored Inc.*, 913 P.2d 377, 379 (Wash. 1996). The tort of wrongful termination in violation of public policy is a narrow exception to the at-will doctrine. *White v. State*, 929 P.2d 396, 408 (Wash. 1997). "To state a cause of action, the plaintiff must *plead* and prove that his or her termination was motivated by reasons that contravene an important mandate of public policy." *Becker v. Cmty. Health Sys., Inc.*, 359 P.3d 746, 749 (Wash. 2015) (emphasis added). The Washington State Supreme Court has outlined four factual scenarios that implicate the wrongful termination tort. *Id*. The four scenarios are:

> (1) when employees are fired for refusing to commit an illegal act, (2) when employees are fired for performing a public duty or obligation, such as serving jury duty, (3) when employees are fired for exercising a legal right or privilege, such as filing workers' compensation claims, and (4) when employees are fired in retaliation for reporting employer misconduct, i.e., whistle-blowing.[2]

*Rose v. Anderson Hay & Grain Co.* 358 P.3d 1139, 1142 (2015) (citing *Gardner*, 913 P.2d 377, 379). "Under each scenario, the plaintiff is required to identify the recognized public policy and demonstrate that the employer contravened that policy by terminating the employee." *Id*.

Plaintiff alleges that she was terminated in retaliation for reporting employer

---

[2] Defendant incorrectly analyzes Plaintiff's claim using the analytical framework first adopted by the Washington Supreme Court in *Gardner*. 913 P.2d at 382 (adopting the so-called "Perritt factors" to analyze "all public policy wrongful discharge torts."). The Washington Supreme Court has since held that the Perritt factors do not apply when, as here, a case alleges one of the four recognized categories of wrongful termination in violation of public policy. *See Martin v. Gonzaga Univ.*, 425 P.3d 837, 843 (Wash. 2018) (citing *Becker*, 359 P.3d at 746).

ORDER
C18-1279-JCC
PAGE - 4

misconduct.[3] (Dkt. No. 1-1 at 6.) Plaintiff also alleges that she engaged in activities that further Washington public policy, including "reporting corporate embezzlement, exposing an unlawful sales scheme, and raising safety concerns about implantable medical products involved in that scheme." (*Id*.) Plaintiff additionally alleges that she "believed in good faith" that the conduct she reported "was improper, unlawful, and unethical." (*Id*.) Plaintiff asserts that Defendant terminated her employment as a result of reporting this alleged misconduct to Mr. Viselli and other corporate executives. (*Id*. at 5–7.)

To state a claim for wrongful termination based on whistle-blowing, courts "generally examine the degree of alleged employer wrongdoing, together with the reasonableness of the manner in which the employee reported, or attempted to remedy, the alleged misconduct." *Dicomes v. State*, 782 P.2d 1002, 1006 (Wash. 1989). An employer's reported misconduct can involve "either a violation of the letter or policy of [a] law, so long as the employee sought to further the public good, and not merely private or proprietary interests, in reporting the alleged wrongdoing." *Id.* at 1008.

In reviewing the complaint, the Court identifies the following factual allegations that conceivably support Plaintiff's whistle-blowing theory:

- Plaintiff told Mr. Viselli that her co-worker was stealing money from Defendant by submitting fraudulent travel reimbursements.
- Plaintiff voiced concerns about the Sonoscape scheme to several of Defendant's senior executives. Plaintiff told these executives that "members of her team were using Mr. Chamber's ultrasound equipment as part an enticement for would-be customers to purchase SpaceOAR." Plaintiff also talked to these

---

[3] In her response brief, Plaintiff also states that her claim is supported by "her refusal to commit an illegal act . . . because Viselli was upset she would not support and participate in his fraudulent scheme." (Dkt. No. 14 at 8.) The complaint does not plausibly allege that Plaintiff was terminated for refusing to commit an illegal act. First, the complaint does not allege that Plaintiff refused to participate in the alleged scheme. Second, there are no factual allegations that Plaintiff was terminated because she refused to participate in the alleged scheme.

1  executives about "the conflict of interest inherent in an employee of Augmenix supplying complimentary disposable and implantable equipment."

- Plaintiff "complained to Mr. Viselli about multiple issues including the unlawful, off-label use of products by certain providers as well as possible Medicare fraud by another physician with whom Mr. Viselli worked closely and separately."

(Dkt. No. 1-1 at 2–5.)

These allegations, even accepted as true, do not enable the Court to draw a reasonable inference that Defendant retaliated against Plaintiff for reporting the alleged misconduct. First, the complaint does not contain any allegations explaining how the misconduct Plaintiff reported violated the letter or policy of a specific law or regulation. *See Dicomes*, 782 P.2d at 1008; *see also Martin*, 425 P.3d at 844 (affirming summary judgment of wrongful termination tort premised on a whistle-blowing theory where plaintiff failed to demonstrate how employer's failure to install wall-padding on basketball courts violated a clear mandate of public policy articulated in a "court decision, statute, or regulation."). It is not sufficient for Plaintiff to merely allege that she "believed in good faith" that the conduct was "improper, unlawful, and unethical." (Dkt. No. 1-1 at 6); *see Martin*, 425 P.3d at 844 ("Even if [plaintiff] truly believed the unpadded walls posed a danger to students, this does not change the analysis, as the focus for whistle-blowing matters is on the employer's level of wrongdoing, not [plaintiff's] actions to address what he perceived as wrongdoing.").

Second, the complaint does not contain sufficient factual allegations to demonstrate that Plaintiff was reporting misconduct of Defendant, as opposed to Defendant's employees. Plaintiff's misconduct allegations pertain to her co-workers and Mr. Viselli. (*See generally* Dkt. No. 1-1.) It is not clear from the complaint how the alleged misconduct of Plaintiff's co-workers represented misconduct on the part of Defendant, such that Plaintiff can maintain her claim that she reported *employer* misconduct. *See Martin*, 425 P.3d at 843 (wrongful termination in

violation of public policy is implicated "where employees are fired in retaliation for reporting employer misconduct.").

In her response to Defendant's motion to dismiss, Plaintiff addressed some of the complaint's deficiencies. (*See generally* Dkt. No. 14.) For example, Plaintiff lists various statutes and policies that she believes were being violated by Defendant and its employees. (*See* Dkt. No. 14 at 9–12.) However, the Court cannot consider these allegations because they are not contained in the complaint. *See Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993) (noting that a district court's review of Rule 12(b)(6) motion is limited to the facts alleged in the complaint). In its current form, the complaint does not contain sufficient allegations to plausibly allege that Defendant retaliated against Plaintiff for reporting employer misconduct.

For those reasons, Defendant's motion for judgment on the pleadings regarding Plaintiff's wrongful termination in violation of public policy claim is GRANTED. Plaintiff's claim is DISMISSED without prejudice and with leave to amend. If Plaintiff chooses to file an amended complaint, she must plead additional allegations that demonstrate Defendant violated the letter or policy of a statute, regulation, or court decision, and that Defendant is responsible for the reported misconduct.

### C. WLAD Gender and Age Discrimination

The WLAD prohibits employers from discriminating against any employee in either the terms or conditions of employment on the basis of a protected characteristic, including age and gender. RCW 49.60.180(3). To state a prima facie claim for disparate treatment discrimination based on gender or age, a plaintiff must show that he or she: (1) belongs to a protected class, (2) was treated less favorably in the terms or conditions of employment, (3) than a similarly situated, non-protected employee, and (4) did substantially the same work as the nonprotected comparator. *See Washington v. Boeing Co.*, 19 P.3d 1041, 1048 (Wash. Ct. App. 2000) (citing *Johnson v. Dep't of Social & Health Servs.*, 907 P.2d 1223, 1232 (Wash. Ct. App. 1996)).

Plaintiff alleges disparate treatment discrimination based on her gender and age by

Defendant. (Dkt. No.1-1 at 7–8.) Plaintiff alleges that Defendant's stated reason for terminating her—that her access to Providence medical facilities had been temporarily revoked—amounted to discrimination because:

> On information and belief, another Augmenix employee directly supervised by Mr. Viselli had his access privileges revoked at a medical facility in California. Unlike Ms. Bye, his employment was not terminated. In fact, he received no discipline at all. In addition to being male, he was significantly younger than Ms. Bye.

(*Id*. at 6.) In addition, the complaint alleges that Mr. Viselli had also been temporarily restricted from accessing Providence medical facilities. (*Id*.)

The complaint plausibly alleges claims of disparate treatment discrimination on the basis of gender and age. For the purpose of establishing her claims, Plaintiff was a member of a protected class based on her gender and age, and the alleged comparator was both male and "significantly younger" than Plaintiff. (*Id*.) The complaint plausibly alleges that Plaintiff was treated less favorably than the alleged comparator when she was terminated for having her access to Providence's medical facilities restricted, as the comparator was neither terminated nor disciplined for having his access restricted to a medical facility in California. (*Id*.) The Court can draw a reasonable inference that Plaintiff and the alleged comparator were similarly situated and did substantially the same work based on the allegation that they were both directly supervised by Mr. Viselli and were both restricted from a medical facility.

Defendant argues that the complaint "lacks factual detail sufficient to support a plausible inference that the unnamed comparator was 'similarly situated' to Bye or that Bye's age or gender motivated her termination." (Dkt. No. 13 at 14.) Defendant goes on to list various reasons to question whether Plaintiff and the alleged comparator were similarly situated, including that Plaintiff was restricted from multiple medical facilities while the alleged comparator, according to the complaint, was only restricted from one hospital. (*Id*.)

Defendant's argument would require the Court to make factual distinctions that are not proper at this stage of the proceeding. *See Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1062

(9th Cir. 2004) (noting that for federal discrimination claims "[t]he prima facie case is 'an evidentiary standard, not a pleading requirement.' . . . Failure to adduce it may result in a later loss at summary judgment, but failure to plead it does not support dismissal at the outset.") (citation omitted). Plaintiff alleges that she was terminated because of something that also happened to a younger, male colleague under the supervision of the same manager, yet he was neither disciplined nor terminated. Such allegations are sufficient for the Court "to draw a reasonable inference that Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. That is especially true when considering that Plaintiff alleges that she was one of Defendant's top sales representatives the month before she was terminated and had never been written up, counseled, or warned prior to being fired. Whatever its merits, Defendant's argument is better suited for summary judgment.

For those reasons, Defendant's motion for judgment on the pleadings regarding Plaintiff's WLAD claims is DENIED.

## III. CONCLUSION

For the foregoing reasons, Defendant's motion for judgment on the pleadings (Dkt. No. 13) is GRANTED in part and DENIED in part. If Plaintiff chooses to file an amended complaint, she must do so within 30 days of the issuance of this order. If filed, the amended complaint shall only include additional allegations regarding her claim for wrongful termination in violation of public policy as explained in this order.

DATED this 30th day of October 2018.

John C. Coughenour
UNITED STATES DISTRICT JUDGE